```
            IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF KANSAS


KIPPER MOUNT,                    )
                                 )
              Plaintiff,         )
                                 )
vs.                              )    Case No. 08-1097-WEB
                                 )
MICHAEL J. ASTRUE,               )
Commissioner of                  )
Social Security,                 )
                                 )
              Defendant.         )
_____)
```

RECOMMENDATION AND REPORT

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties and has been referred to this court for a recommendation and report.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the

1

correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial

gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

## II. History of case

On August 29, 2007, administrative law judge (ALJ) Edmund C. Werre issued his decision (R. at 13-25). Plaintiff alleges that he has been disabled since August 1, 2004 (R. at 13). Plaintiff is insured for disability insurance benefits through December 31, 2008 (R. at 14, 16). At step one, the ALJ found that plaintiff

4

has not engaged in substantial gainful activity since August 1, 2004, the alleged onset date (R. at 16). At step two, the ALJ found that plaintiff had the following severe impairments: a seizure disorder, chronic obstructive pulmonary disease (COPD), asthma, recurrent hepatitis C, a right shoulder impairment, bilateral inguinal hernia repair, coronary artery disease, a dysthymic disorder, a personality disorder, attention deficit hyperactivity disorder (ADHD), and general anxiety disorder (R. at 16). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 16-18). After determining plaintiff's RFC (R. at 18), the ALJ found at step four that plaintiff is unable to perform past relevant work (R. at 23). At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 24). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 25).

**III. Did the ALJ err in his finding that plaintiff's impairments do not meet or equal listed impairments 11.02 and 11.03?**

Plaintiff has the burden at step three of demonstrating, through medical evidence, that his/her impairments meet all of the specified medical criteria contained in a particular listing. Riddle v. Halter, 10 Fed. Appx. 665, 667 (10th Cir. March 22, 2001). An impairment that manifests only some of those criteria, no matter how severely, does not qualify. Sullivan v. Zebley,

493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990).  Because the listed impairments, if met, operate to cut off further inquiry, they should not be read expansively.  Caviness v. Apfel, 4 F. Supp.2d 813, 818 (S.D. Ind. 1998).

In his decision, the ALJ found that plaintiff did not meet listed impairments 11.02 (convulsive epilepsy) or 11.03 (nonconvulsive epilepsy), noting that EEG testing was normal with no epileptiform discharges (R. at 17).  In 2002, the regulations stated that "Documentation of epilepsy should include at least one electroencephalogram (EEG)."  20 C.F.R. Pt. 404, Subpt. P, App. 1, 11.00(A) (2002 at 462).  Both listed impairments 11.02 and 11.03 stated that the seizures had to be "documented by EEG." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 11.02 and 11.03 (2002 at 463-464).  That language was deleted from the regulation in 2003. 20 C.F.R. Pt. 404, Subpt. P. App. 1, 11.00(A), 11.02, and 11.03 (2003 at 465, 466), and documentation by an EEG does not appear in the present regulations.  20 C.F.R. Pt. 404, Subpt. P. App. 1, 11.00(A) , 11.02, and 11.03 (2008 at 498, 500).  An EEG was no longer required for documentation effective May 24, 2002 because an EEG was found to be a definitive diagnostic tool in cases of nonconvulsive epilepsy in children, but it was found to be rare for an EEG to confirm epilepsy in its other forms for either adults or children.  67 Fed. Reg. 20018 at 20019 (Apr. 24, 2002). Plaintiff argues that the ALJ erred by erroneously relying on

6

outdated requirements for these listed impairments.

First, at the hearing, the ALJ asked the attorney for the plaintiff if he was arguing that any impairment meets or equals a listing. Plaintiff's attorney responded as follows: "No, Your Honor, we're not" (R. at 813). In his decision, the ALJ, in making his step three findings, indicated that plaintiff, through his counsel, had stipulated that plaintiff did not have an impairment that met or equaled a listed impairment (R. at 17).

In the case of Tracy v. Astrue, 518 F. Supp.2d 1291, 1305 (D. Kan. 2007), the claimant's attorney stated at the hearing that he did not think that plaintiff's impairments met or equaled a listing. The ALJ found that plaintiff's impairments did not meet or equal a listed impairment, but also noted that claimant's attorney had not advanced any argument supporting a conclusion that any of claimant's impairments met or equaled a listed impairment. However, when plaintiff sought judicial review, plaintiff pointed to evidence in the record from a physician stating that plaintiff's impairments met two listed impairments. The court held as follows:

> The invited error doctrine prevents a party from inducing action by a court and later seeking reversal on the ground that the requested action was error. Eateries, Inc. v. J.R. Simplot Co., 346 F.3d 1225, 1229 (10th Cir. 2003); John Zink Co. v. Zink, 241 F.3d 1256, 1259 (10th Cir. 2001). This doctrine has been applied when a party requested that the Departmental Appeals Board (DAB) of the Department of Health and Human

>  Services, in an appeal from an ALJ decision, conduct a *de novo* review of the record, and then claimed before the district court that the DAB erred in conducting a *de novo* review. St. Anthony Hospital v. U.S. Dept. of H.H.S., 309 F.3d 680, 686, 690, 696 (10th Cir. 2002). This doctrine has been applied by this court when an attorney stipulated to an ALJ that the claimant's mental impairment was non-severe at step two, and then argued to this court that the ALJ erroneously determined that the mental impairment was non-severe. Basler v. Barnhart, Case No. 02-1084-WEB (recommendation and report, April 2, 2003 at 10-12; affirmed by district court April 15, 2003), and when an attorney, on the record, amended the onset date to a date later than had been originally alleged, but then argued that the ALJ erred by failing to find the earlier onset date which had been originally alleged. Rivas v. Barnhart, Case No. 05-1266-MLB (recommendation and report, July 26, 2006 at 6-9; affirmed by district court Aug. 16, 2006).
>      In this case, the attorney clearly and unambiguously asserted to the ALJ that he did not believe that his client met a listing. It is therefore clear that plaintiff's counsel induced or invited the ALJ at step [three] to find that plaintiff did not meet a listed impairment. Therefore, the court holds that the doctrine of invited error bars the plaintiff from raising this issue on appeal.

518 F. Supp.2d at 1305-1306. Because plaintiff's counsel clearly and unambiguously asserted to the ALJ that they were not arguing that plaintiff's impairment met or equaled a listing, it is clear that plaintiff's counsel induced or invited the ALJ at step three to find that plaintiff did not meet a listed impairment. Therefore, the court holds that the doctrine of invited error bars the plaintiff from raising this issue on appeal.

Second, plaintiff did not discuss how the evidence demonstrated that plaintiff's impairments either met or equaled listed impairment 11.02 or 11.03.  In three prior cases in this district, Cash v. Barnhart, Case No. 02-1402-MLB (D. Kan., report and recommendation filed Nov. 12, 2003; affirmed on Dec. 2, 2003); O'Neal v. Barnhart, Case No. 02-1129-JTM (D. Kan., report and recommendation filed June 26, 2003; affirmed on July 17, 2003); and Munsinger v. Barnhart, Case No. 01-1332-MLB (D. Kan., report and recommendation filed July 22, 2002; affirmed on August 26, 2002), the plaintiff had argued that the ALJ erred by failing to consider or discuss a specific listed impairment that they argued was met in their case.  However, in all three cases, plaintiff failed to make any effort to demonstrate how the medical evidence in the case met the criteria of the listed impairment.  Therefore, plaintiff in these cases failed to meet their burden of establishing that their impairment met all of the specified criteria contained in the particular listed impairment.  For this reason, the court found in these cases that the ALJ did not err by failing to discuss the listed impairment cited by the plaintiff.  In the case presently before the court (Mount), because plaintiff clearly failed to meet their burden of establishing that their impairment met or equaled listed impairment 12.02 or 12.03, the court finds that the ALJ did not err in its finding that plaintiff's impairments did not meet or

equal listed impairments 12.02 or 12.03.

**IV.  Did the ALJ err in the weight accorded to the opinions of Dr. Wallace, plaintiff's treating psychiatrist?**

Dr. Wallace filled out a mental RFC assessment dated May 8, 2007, in which he found that plaintiff was markedly limited in 11 categories, moderately limited in 3 categories, and not significantly limited in 6 categories (R. at 802-804).[1]  The ALJ gave neither substantial or controlling weight to his opinions, explaining as follows:

> The undersigned considered the opinions of Dr. Wallace, who on May 8, 2007 indicated that the claimant's mental impairments caused marked limitations in social interaction and concentration and persistence (Exhibit 14F). However, the opinions of Dr. Wallace are conclusory, not consistent with the longitudinal record, and not consistent with the GAF of 62 he gave the claimant on August 25, 2006. Furthermore, when seen on March 1, 2007, the claimant was no longer taking Xanax, Celexa, Totalac, or Lortab, and he ambulated in without a cane. At that time, Dr. Wallace stated that the claimant appeared more alert than he had ever seen, and he wrote a note to the nursing home saying that he thought the claimant looked wonderful and whatever they were doing was working (Exhibit 13F). Furthermore, in the Evaluation, dated June 4, 2007, Dr. Wallace stated that the claimant did like prescription medications (opiates, sedatives), although these were limited (Exhibit l5F). Therefore, the

---

[1]Dr. Wallace found plaintiff markedly limited in 1 of 3 categories under "Understanding and Memory," in 5 out of 8 categories under "Sustained Concentration and Persistence," in 2 out of 5 categories under "Social Interaction," and in 3 out of 4 categories under "Adaptation" (R. at 802-803).

10

> opinions of Dr. Wallace are not given substantial or controlling weight.

(R. at 21). Dr. Wallace treated the plaintiff in 2006-2007 (R. at 789-801).

The ALJ contends that the opinions of Dr. Wallace are not consistent with the longitudinal record (R. at 21). However, the only other medical opinion regarding plaintiff's mental impairments supports the findings of Dr. Wallace. A Psychiatric Review Technique form filled out by a state agency consultant, Dr. Stern, on September 7, 2005 found that plaintiff's impairment met listed impairment 12.09 (Substance addiction disorders) (R. at 563), indicating that the requirements of listed impairment 12.04 (depressive syndrome) were satisfied (R. at 563, 571).[2] Dr. Stern indicated, for purposes of making a determination of the severity of plaintiff's mental impairment and whether or not it met or equaled a listed impairment, that plaintiff had the following functional limitations:

| Functional Limitation | Degree of limitation |
|---|---|
| Restriction of Activities of Daily Living | Marked |
| Difficulties in Maintaining Social Functioning | Marked |

---

[2] Listed impairment 12.09 is met when behavior changes or physical changes associated with the regular use of substances that affect the central nervous system are present, and the requirements of one of a number of other listed impairment are satisfied, including 12.04. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.09(B)(2008 at 509).

| Functional Limitation | Degree of limitation |
|---|---|
| Difficulties in Maintaining Concentration, Persistence, or Pace | Marked |
| Episodes of Decompensation, Each of Extended Duration | One or Two |

(R. at 573).

The ALJ referenced the opinion of Dr. Stern that plaintiff met listed impairment 12.09, but relied on an evaluation from Dr. Wallace, dated June 4, 2007, that plaintiff's limitations "would remain" even if the drug and alcohol abuse were to stop to conclude that drug and alcohol abuse is not a contributing factor material to plaintiff's determination of disability (R. at 17).

In fact, Dr. Wallace's evaluation of June 4, 2007 stated that plaintiff's limitations "would be disabling even if drug and alcohol use were to stop" (R. at 807). Dr. Stern had indicated in his report that plaintiff's "difficulties can be reasonably attributed to his drug abuse and withdrawal from drug abuse" and that "effective treatment for his psychiatric conditions are clearly hindered by his substance abuse" (R. at 577). Dr. Stern believed that plaintiff's primary impairment was substance abuse (R. at 577). Although Dr. Wallace and Dr. Stern may have differed on the question of whether drug and alcohol abuse was a contributing factor material to the claimant's determination of disability, both were in agreement that plaintiff had marked mental limitations. Dr. Stern found that plaintiff had marked

limitations in the general category of difficulties in maintaining social functioning (R. at 573), and Dr. Wallace found that plaintiff was markedly limited in 2 out of 5 categories of "social interaction" (R. at 803). Dr. Stern also found that plaintiff had marked limitations in the general category of difficulties in maintaining concentration, persistence, or pace (R. at 573), and Dr. Wallace found that plaintiff had marked limitations in 5 out of 8 categories of sustained concentration and persistence (R. at 802-803). However, the ALJ failed to even discuss the findings of Dr. Stern that plaintiff had marked mental limitations.

An ALJ must evaluate every medical opinion in the record. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). Even on issues reserved to the Commissioner, including plaintiff's RFC and the ultimate issue of disability, opinions from any medical source must be carefully considered and must never be ignored. Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3. It is clear legal error to ignore a medical opinion. Victory v. Barnhart, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005). According to the regulations, 20 C.F.R. § 404.1527(f)(2)(i) states that ALJ's must consider findings of nonexamining state agency medical and psychological consultants. Furthermore, 20 C.F.R. § 404.1527(f)(2)(ii) states that unless the treating source opinion is given controlling weight (which did not occur

in this case), the ALJ "must" explain in the decision the weight given to the opinions of state agency medical or psychological consultants.  SSR 96-6p reiterates that ALJs may not ignore the opinions of state agency consultants, and must explain the weight given to these opinions in their decisions.  1996 WL 374180 at *1, 2.

The court therefore concludes that the ALJ erred by failing to consider the opinion of Dr. Stern that plaintiff had marked mental limitations.  Furthermore, the court finds that the ALJ's failure to give substantial weight to the opinions of Dr. Wallace because they were not supported by the longitudinal record is not supported by substantial evidence.  Dr. Stern independently concluded in 2005, before plaintiff was seen by Dr. Wallace, that plaintiff was markedly mentally impaired in 3 general categories.  Dr. Wallace, after treating plaintiff in 2006-2007, found that plaintiff was markedly mentally impaired in 11 out of 20 specific categories.  No medical opinion evidence disputes the findings of either Dr. Stern or Dr. Wallace.  Therefore, the court finds that this case should be remanded in order to consider the opinions of Dr. Stern that plaintiff had marked mental impairments, and to reconsider the opinions of Dr. Wallace in light of the opinions of Dr. Stern and the fact that no medical opinion evidence disputes the findings of either Dr. Wallace or Dr. Stern.

**V.  Did the ALJ err in his analysis of plaintiff's credibility?**

14

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005). Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff. Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler. White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why. McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002). It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible. Hardman v.

Barnhart, 362 F.3d 676, 679 (10th Cir. 2004).  On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court.  White, 287 F.3d at 909-910.

The ALJ stated that plaintiff reported doing laundry, taking out the trash, riding in a car, using public transportation, shopping, paying bills, watching television, and visiting with friends (R. at 23).  The ALJ then stated:

> Although the claimant described limitations in his ability to perform some of these activities, his ability to perform them to any degree suggests that he retains the ability to work full-time.

(R. at 23).

This finding is clearly erroneous.  Although the nature of daily activities is one of many factors to be considered by the ALJ when determining the credibility of testimony regarding pain or limitations, Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993), the ALJ must keep in mind that the sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity.  Thompson, 987 F.2d at 1490; see Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983)(the fact that claimant admitted to working in his yard, performed a few household tasks, worked on cars, and took occasional trips was found by the court to be

activities not conducted on a regular basis and did not involve prolonged physical activity; while this evidence may be considered along with medical testimony in the determination of whether a party is entitled to disability benefits, such diversions do not establish, without more evidence, that a person is able to engage in substantial gainful activity).  One does not need to be utterly or totally incapacitated in order to be disabled.  <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1050 (9th Cir. 2001); <u>Jones v. Sullivan</u>, 804 F. Supp. 1398, 1405 (D. Kan. 1992).

In the case of <u>Draper v. Barnhart</u>, 425 F.3d 1127, 1130-1131 (8th Cir. 2005), the ALJ noted that the claimant engaged in household chores, including laundry, grocery shopping, mowing, cooking, mopping and sweeping.  The ALJ concluded that claimant's allegations of disabling pain were inconsistent with her reports of her normal daily activities and were therefore not deemed credible.  The court found that substantial evidence did not support this conclusion, holding as follows:

> **The fact that Draper tries to maintain her home and does her best to engage in ordinary life activities is not inconsistent with her complaints of pain, and in no way directs a finding that she is able to engage in light work.**  As we said in <u>McCoy v. Schweiker</u>, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc), the test is whether the claimant has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world."  In other words, evidence of performing general housework does

17

>not preclude a finding of disability.  In <u>Rainey v. Dep't of Health & Human Servs.</u>, 48 F.3d 292, 203 (8th Cir.1995), the claimant washed dishes, did light cooking, read, watched TV, visited with his mother, and drove to shop for groceries.  We noted that these were activities that were not substantial evidence of the ability to do full-time, competitive work. In <u>Baumgarten v. Chater</u>, 75 F.3d 366, 369 (8th Cir.1996), the ALJ pointed to the claimant's daily activities, which included making her bed, preparing food, performing light housekeeping, grocery shopping, and visiting friends.  We found this to be an unpersuasive reason to deny benefits: "We have repeatedly held...that 'the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work.' " Id. (quoting <u>Hogg v. Shalala</u>, 45 F.3d 276, 278 (8th Cir.1995)). Moreover, we have reminded the Commissioner
>
>>that to find a claimant has the residual functional capacity to perform a certain type of work, the claimant must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world...The ability to do light housework with assistance, attend church, or visit with friends on the phone does not qualify as the ability to do substantial gainful activity.
>
>Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir.1989) (citations omitted).

<u>Draper</u>, 425 F.3d at 1131 (emphasis added).

Plaintiff was 50 years old at the time of the ALJ decision (DOB: 5/23/57, R. at 814).  Plaintiff moved into the Winfield

Soldier's Home for assisted living in 2006 (R. at 720, 727, 813-814, 818). Dr. Wallace, on March 1, 2007, described the facility in which plaintiff was living as a "nursing home" (R. at 789-790). Plaintiff testified that he has problems keeping "track on things," but that the nursing staff at the facility keeps records of his "appointments and stuff" (R. at 818). Plaintiff indicated his goal in treatment is to get to the point where he might be able to get an apartment on his own (R. at 817-818). The fact that plaintiff is able to engage in some ordinary life activities is not inconsistent with his claims of physical and mental limitations, and provides absolutely no support for the ALJ's conclusion that his ability to perform life activities "to any degree suggests that he retains the ability to work full-time" (R. at 23). Furthermore, it was clearly erroneous of the ALJ not to consider the fact that plaintiff is presently living in an assisted living unit or nursing home when assessing plaintiff's credibility. While the ALJ does not need to discuss every piece of evidence, the ALJ may not rely solely on portions of the record that support his decision and ignore evidence favorable to a claimant. Flores v. Apfel, 2000 WL 1694301 at *2 (10th Cir. Nov. 13, 2000).

The court therefore finds that the ALJ's credibility findings are not supported by substantial evidence. Furthermore, when this case is remanded, the ALJ shall also reevaluate

plaintiff's credibility after taking into consideration the opinions of Dr. Stern and Dr. Wallace that plaintiff has marked mental impairments.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on March 10, 2009.

                                              s/Donald W. Bostwick
                                              DONALD W. BOSTWICK
                                              United States Magistrate Judge